IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
1:19-cv-723

**SANDRA M. CONSTABLE,**

    Plaintiff,

vs.

**LIFE INSURANCE COMPANY OF NORTH AMERICA,**

    Defendant.

## COMPLAINT

1. This is an action arising under the Employee Retirement Income Security Act of 1974, as amended, 29 U.S.C. §1001 *et seq.* ("ERISA"), to recover benefits due under an employee welfare benefit plan and to recover costs, attorneys' fees, and interest, as provided by ERISA.

PARTIES

2. Plaintiff, Sandra M. Constable, is a citizen and resident of Albemarle, Stanly County, North Carolina.

3. Defendant, Life Insurance Company of North America, is a properly organized insurance company authorized to do business in the State of North Carolina, and does substantial business in Stanly County.

4. At all times relevant to this action, Life Insurance Company of North America provided insured long term disability ("LTD") benefits, life insurance waiver of

premium ("LWOP") benefits, and other associated ancillary benefits pursuant to the SFS Group USA, Inc. LTD Plan ("the Plan").

5. Life Insurance Company of North America is a subsidiary and/or division of CIGNA Corporation, and is authorized to use and does use the registered service marks "CIGNA Group Insurance" and "CIGNA" (hereinafter, collectively referred to as "CIGNA").

6. CIGNA serves as the claims administrator and fiduciary in handling all aspects of disability benefit claims and LWOP benefit claims made by insured beneficiaries under the Plan, including the Plaintiff in this action.

7. CIGNA has a fiduciary obligation to Plaintiff to administer the Plan fairly and impartially, for the exclusive benefit of beneficiaries such as Plaintiff.

## JURISDICTION AND VENUE

8. This Court has jurisdiction to hear this claim pursuant to 28 U.S.C. § 1331, in that the claim arises under the laws of the United States. Specifically, Plaintiff brings this action to enforce her rights under ERISA, as allowed by 29 U.S.C. § 1132.

9. Venue in the Middle District of North Carolina is appropriate by virtue of Plaintiff's residence in this district and Defendant's doing business in this district.

## FACTUAL ALLEGATIONS

10. At all times relevant to this action, Plaintiff was a covered beneficiary under the group policy (Policy No. SGD-0606062) (the "Policy") issued by Defendant to SFS Group USA, Inc. ("SFS Group"), formerly known as Gesipa Fasteners USA, Inc.

11. By virtue of becoming and continuing to remain disabled, Plaintiff was also entitled to a waiver of her group life insurance premium from Defendant under the Plan's LWOP provision, which was provided for under the Waiver of Premium Policy (Policy No. SGM-605912) issued by Defendant to SFS Group.

12. Plaintiff began working as a Customer Service Representative for SFS Group in April 2016 and worked there until the onset of her disability.

13. The Plan provides LTD benefits to beneficiaries who meet the Policy definition of "disability" or "disabled," as follows:

> *The Employee is considered Disabled if, solely because of Injury or Sickness, he or she is:*
> 1. *Unable to perform the material duties of his or her Regular Occupation; and*
> 2. *Unable to earn 80% or more of his or her Indexed Earnings from working in his or her Regular Occupation.*
>
> *After Disability Benefits have been payable for 24 months, the Employee is considered Disabled if, solely due to Injury or Sickness, he or she is:*
> 1. *Unable to perform the material duties of any occupation for which he or she is, or may reasonably become, qualified based on education, training or experience; and*
> 2. *Unable to earn 60% or more of his or her Indexed Earnings.*

14. The Policy defines "Regular Occupation" as follows:

> ***Regular Occupation***
> *The occupation the Employee routinely performs at the time the Disability begins. In evaluating the Disability, the Insurance Company will consider the duties of the occupation as it is normally performed in the general labor market in the national economy. It is not work tasks that are performed for a specific employer or at a specific location.*

15. The Plan provides LWOP benefits to beneficiaries who meet the Plan definition of "disability" or "disabled," as follows:

> *Disability/Disabled means because of Injury or Sickness an Employee is unable to perform the material duties of his or her Regular Occupation, or is receiving disability benefits under the Employer's plan, during the initial 9 months of Disability. Thereafter, the Employee must be unable to perform all of the material duties of any occupation which he or she may reasonably become qualified based on education, training or experience, or is subject to the terms of a Rehabilitation Plan approved by the Insurance Company.*

16. On or about August 3, 2016, Plaintiff slipped and fell while entering her garage, causing her to hit her head on the garage's concrete floor.

17. After the fall, Plaintiff experienced nausea and disorientation but persisted in continuing to actively work in her Regular Occupation.

18. Approximately one week after her fall, Plaintiff began to experience an increase in the severity of her nausea and began to suffer from headaches, vision disturbances, and dizziness, and was thereafter diagnosed with a traumatic brain injury ("TBI") that resulted in post-concussion syndrome.

19. On or about October 2, 2016, Plaintiff was forced to stop working and leave employment with SFS Group due to increasingly severe headaches, vision disturbances, nausea, and dizziness, as well as significant cognitive and memory impairment.

20. Plaintiff suffers from numerous conditions, including but not limited to:

   a. TBI;

   b. Post-concussion syndrome;

   c. Neurocognitive disorder (due to TBI);

   d. Benign paroxysmal vertigo;

   e. Meniere's disease; and

4

        f.        Temporomandibular joint ("TMJ") disorder.

21.    As a result of her conditions, Plaintiff suffers from numerous debilitating symptoms, including but not limited to:

        a.        Memory impairment;

        b.        Confusion;

        c.        Attentional deficits;

        d.        Inability to concentrate;

        e.        Aphasia (an impaired ability to understand or express speech);

        f.        Inability to promptly and accurately process information;

        g.        Inability to multi-task;

        h.        Impaired critical thinking ability;

        i.        Impaired motor coordination;

        j.        Vertigo;

        k.        Dizziness;

        l.        Nausea;

        m.        Vomiting;

        n.        Tinnitus;

        o.        Hearing loss;

        p.        Vision disturbance (including chronic double and blurred vision);

        q.        Insomnia; and

        r.        Headaches.

22. As a result of her numerous and severe disabling conditions, Plaintiff is unable to perform the material duties of her Regular Occupation as a Customer Service Representative, which included conveying quotes to potential customers, soliciting sales, entering and facilitating purchase orders, and working to resolve customer inquiries and concerns, among other duties, and Plaintiff is unable to earn 80% or more of her Indexed Earnings from working in her Regular Occupation.

23. The duties of Plaintiff's job as a Customer Service Representative necessitated that Plaintiff have strong communication skills, including the ability to respond in a timely and professional manner to all customer inquiries, requests, or concerns, as well as advanced critical thinking and problem solving skills, and the ability to understand and apply mathematical concepts as she frequently conveyed price quotes and was tasked with resolving customer complaints concerning billing errors.

24. As a result of her numerous and severe disabling conditions, Plaintiff is unable to perform the material duties of any occupation for which she is, or may reasonably become, qualified based on education, training or experience, and is unable to earn 60% or more of her Indexed Earnings.

25. Plaintiff applied for LWOP benefits under the Plan on December 19, 2016.

26. Plaintiff applied for LTD benefits under the Plan on March 9, 2017.

27. By letter dated April 6, 2017, Defendant denied Plaintiff's claim for LWOP benefits.

28. By letter dated May 4, 2017, Defendant denied Plaintiff's claim for LTD

benefits and advised Plaintiff that she could request a review of her claim for LTD benefits within 180 days of her receipt of the May 4, 2017 letter.

29. By letter dated July 26, 2017, Defendant advised Plaintiff that she could request a review of her claim for LWOP benefits within 180 days of her receipt of the July 26, 2017 letter.

30. By letter dated October 27, 2017, Plaintiff timely appealed the denials of her LTD and LWOP benefit claims.

31. As part of Plaintiff's administrative appeal, Plaintiff submitted written argument and supporting documentation to Defendant, including a written declaration, a supportive letter from Plaintiff's medical provider, supportive letters from Plaintiff's friends and family members, a supportive letter from Plaintiff's employer, SFS Group, and updated medical records from Plaintiff's numerous medical providers.

32. The Department of Labor regulation established to protect procedural fairness in ERISA claims such as Plaintiff's was enabled under Section 409 of ERISA, and is codified at 29 C.F.R. § 2560.503-1 (hereinafter, the "Regulations").

33. For benefits in which the plan administrator must make a determination of disability in order to decide a claim, the Regulations require that a plan administrator provide a claimant with the plan's benefit determination on administrative appeal within a reasonable period of time, but not later than 45 days after receipt of the claimant's request for review by the plan. 29 C.F.R. § 2560.503-1(i)(3)(i).

34. The Regulations provide that the plan administrator may have an additional

7

Case 1:19-cv-00723-CCE-LPA   Document 1   Filed 07/22/19   Page 7 of 15

45 days to render a decision on the administrative appeal if the following conditions are satisfied:

    a.    The extension of time must be for "special circumstances" (such as the need to hold a hearing, if the plan's procedures provide for a hearing);

    b.    Written notice of the extension must be furnished to the claimant before the termination of the initial 45-day period;

    c.    The extension notice must indicate the special circumstances requiring an extension of time; and

    d.    The date by which the plan expects to render the determination on review.

29 C.F.R. §§ 2560.503-1 i(1) and (i)(3)(i).

35. The Regulations allow a maximum of 90 days to render a decision on an administrative appeal. 29 C.F.R. § 2560.503-1(i)(3)(i).

36. By letter dated November 14, 2017, Defendant informed Plaintiff that it was "tolling" the administrative appeal deadline as to her LTD claim because Plaintiff intended to submit additional information as part of her appeal.

37. By letter dated December 6, 2017, Plaintiff provided Defendant with additional information to be considered as part of her administrative appeal, including a copy of Plaintiff's Social Security Administration ("SSA") claim file.

38. By letter dated December 19, 2017, Defendant informed Plaintiff that it was taking a 45-day extension to decide her LTD appeal under ERISA due to Defendant's

8

Case 1:19-cv-00723-CCE-LPA   Document 1   Filed 07/22/19   Page 8 of 15

need to consult a health care professional.

39. By letter dated December 22, 2017, Plaintiff's counsel received a request for information from Kristin Egan, MD, a peer reviewer with Dane Street, LLC.

40. While the header of the December 22, 2017 letter read "Claimant: Sandra Constable," Dr. Egan went on to request medical information for patient C.H., instead of for Plaintiff. There was no further mention of Plaintiff in the December 22, 2017 letter and the letter failed entirely to reference Defendant, LTD benefits, or Plaintiff's claim number.

41. Upon information and belief, patient C.H. is not associated with Plaintiff's claim.

42. Because Dr. Egan's December 22, 2017 request sought protected medical information, Plaintiff's counsel wrote to Defendant that same day, by letter and fax dated December 22, 2017, and requested that Defendant confirm it enlisted Dane Street to review Plaintiff's claim before Plaintiff responded to Dr. Egan's letter.

43. By letter dated January 17, 2018, Defendant informed Plaintiff that it was taking another 45-day extension to decide her LTD appeal under ERISA due to Defendant's need to consult a health care professional.

44. By letter dated January 19, 2018, Defendant confirmed that it hired Dane Street to conduct a medical review of Plaintiff's claim.

45. Less than one week after receiving confirmation that Dane Street was acting on behalf of Defendant, Plaintiff's treating provider responded to Dr. Egan's December 22, 2017 letter by fax dated January 25, 2018.

9

46. By letter dated February 16, 2018, Defendant informed Plaintiff that it was taking a 45-day extension to decide her LWOP appeal under ERISA due to Defendant's need to consult a health care professional.

47. By letter dated March 1, 2018, Defendant upheld its decision to deny Plaintiff's claim for LTD benefits. In upholding its denial, Defendant advised Plaintiff that she could request a second review of her claim within 180 days.

48. Pursuant to the Regulations, Defendant's deadline to notify Plaintiff of its benefit determination on review as to Plaintiff's LTD claim expired on or before January 25, 2018.

49. 125 days passed between the time Plaintiff submitted her appeal on October 27, 2017 and when Defendant decided her appeal as to her LTD claim on March 1, 2018.

50. By letter dated June 25, 2018, Defendant upheld its decision to deny Plaintiff's claim for LWOP benefits. In upholding its denial, Defendant advised Plaintiff that she could request a second review of her claim within 180 days.

51. Pursuant to the Regulations, Defendant's deadline to notify Plaintiff of its benefit determination on review as to Plaintiff's LWOP claim expired on or before January 25, 2018.

52. 241 days passed between the time Plaintiff submitted her appeal on October 27, 2017 and when Defendant decided her appeal as to her LWOP claim on June 25, 2018.

53. Plaintiff timely appealed the denial of her LTD and LWOP benefit claims for a second time by letter dated August 27, 2018, submitting written argument, a

neuropsychological evaluation, and updated medical records.

54. Despite Defendant's possession of an authorization form signed by Plaintiff that allowed Defendant to obtain information directly from the SSA, Defendant informed Plaintiff by letter dated September 28, 2018 that it was "tolling" the administrative appeal deadline until Plaintiff advised Defendant of any updates regarding her claim for SSA disability benefits.

55. Plaintiff attempted to contact Defendant by telephone on October 1, 2018 and October 3, 2018 to respond to Defendant's September 28, 2018 letter, leaving voicemail messages on each occasion.

56. Receiving no answer or return calls, Plaintiff advised Defendant in writing by letter dated October 8, 2018 that she had no further information or update to submit responsive to Defendant's September 28, 2018 letter.

57. By letter dated October 15, 2018, Defendant informed Plaintiff that it was taking a 45-day extension to decide her appeal under ERISA for the following reason:

> *We require this extension because of the following circumstances or unresolved issues explained below:*
>
> *We require this extension as we are currently reviewing your claim. This review is needed in order to determine your functional ability, and whether you satisfy the definition of disability as defined under your policy. We expect to make our appeal decision within 45 days from October 15, 2018…*

58. By letter dated December 19, 2018, Defendant upheld its decision to deny Plaintiff's claims for LTD and LWOP benefits.

59. Pursuant to the Regulations, Defendant's deadline to notify Plaintiff of its

11

benefit determination on review as to Plaintiff's LTD and LWOP claims expired on or before November 25, 2018.

60.     114 days passed between the time Plaintiff submitted her second appeal on August 27, 2018 and when Defendant decided her appeal as to her LTD and LWOP claims on December 19, 2018.

61.     Plaintiff now has exhausted her administrative remedies as to her claims for LTD and LWOP benefits, and her claims are ripe for judicial review pursuant to 29 U.S.C. § 1132.

**FIRST CLAIM FOR RELIEF:**
**WRONGFUL DENIAL OF BENEFITS**
**UNDER ERISA, 29 U.S.C. § 1132**

62.     Defendant has wrongfully denied LTD and LWOP benefits to Plaintiff in violation of the Policy, Plan, and ERISA for the following reasons:

   a.     Plaintiff is disabled, as defined by the Plan and Policy, in that as a result of her disability, she is unable to perform the material duties of her Regular Occupation and is unable to earn 80% or more of her Indexed Earnings from working in her Regular Occupation;

   b.     Plaintiff is disabled, as defined by the Plan and Policy, in that as a result of her disability, she is unable to perform the material duties of Any Occupation for which she is, or may reasonably become, qualified based on education, training or experience, and unable to earn 60% or more of her Indexed Earnings;

c. Defendant failed to accord proper weight to the evidence in the administrative record showing that Plaintiff is disabled, by ignoring credible evidence that Plaintiff is disabled within the meaning of the Plan and Policy;

d. Defendant's interpretation of the definition of "Disability" or "Disabled" contained in the policy is contrary to the plain language of the Plan and Policy, and unreasonable;

e. Defendant has attempted to evade the impact of Plaintiff's numerous conditions and the severe functional limitations on her ability to perform the material duties of her Regular Occupation and of Any Occupation;

f. Defendant has wrongfully denied Plaintiff a full, fair, and impartial review of her benefits by ignoring the weight and credibility of evidence submitted, looking for less credible evidence of marginal significance to support its goal of denying her claims;

g. Defendant has violated its contractual obligation to furnish LTD benefits to Plaintiff; and

h. Defendant has violated its contractual obligation to furnish LWOP benefits to Plaintiff.

63. Defendant has further wrongfully denied Plaintiff's benefits by failing to adhere to procedural requirements under ERISA for the following reasons:

a. Defendant wrongfully failed to timely decide Plaintiff's October 27, 2017 appeal as to her LTD claim for 125 days until March 1, 2018;

13

b. Defendant wrongfully failed to timely decide Plaintiff's October 27, 2017 appeal as to her LWOP claim for 241 days until June 25, 2018;

c. Defendant wrongfully failed to timely decide Plaintiff's August 27, 2018 second appeal as to her LTD and LWOP claims for 114 days until December 19, 2018;

d. Defendant failed to provide sufficient "special circumstances" to justify an extension of time to decide Plaintiff's appeals;

e. Defendant wrongfully provided Plaintiff with a procedurally defective administrative review process; and

f. Defendant failed to provide Plaintiff with an accurate date by which she should expect to receive a decision on review.

64. When a plan administrator commits a procedural violation, it loses the benefit of deference and a *de novo* standard of review applies, even if the plan administrator has otherwise adequately granted itself with discretionary authority in the plan documents.

65. As a result of Defendant's actions described herein, including Defendant's failure to timely render appeal determinations within the regulatory timeframe prescribed by ERISA, Defendant has failed to lawfully exercise its discretion and therefore Defendant's decision is not entitled to any deference under prevailing legal standards.

WHEREFORE, Plaintiff prays that the Court:

1. Grant Plaintiff declaratory and injunctive relief, finding that she is entitled to LTD benefits under the terms of the Policy and Plan, and that Defendant be ordered to pay LTD benefits, and all other related benefits, until such time as Plaintiff reaches her Social Security Normal Retirement Age or is no longer disabled;

2. Grant Plaintiff declaratory and injunctive relief, finding that she is entitled to LWOP benefits because she is disabled under the terms of the Policy and Plan;

3. Award pre-judgment interest at a rate of at least 8%;

4. Enter an Order awarding Plaintiff all reasonable attorney fees and expenses incurred as a result of Defendant's wrongful denial of benefits; and

5. Enter an award for such other relief as may be just and appropriate.

This the 22nd day of July, 2019.

/s/Caitlin H. Walton
CAITLIN H. WALTON
N.C. Bar No. 49246
cwalton@essexrichards.com
**ESSEX RICHARDS, P.A.**
1701 South Boulevard
Charlotte, NC 28203-4727
Ph (704) 377-4300
Fax (704) 372-1357

*Attorney for Plaintiff*